Filed 9/26/23  P. v. Cervantes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080152 |
| v. | (Super.Ct.No. RIF094828) |
| LAURENO ARTIAGA CERVANTES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Thomas E. Kelly, Judge. (Retired judge of the Santa Cruz Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Alan L. Amann and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Laureno Artiaga Cervantes, filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the court denied. On appeal, defendant contends the court erred in denying his petition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On October 28, 2000, members from two rival gangs engaged in three separate hostile encounters. Defendant was present for all three. During the second encounter, defendant and a rival gang member engaged in a fistfight. According to undisputed evidence, defendant's gang thereafter set out to exact revenge. Defendant obtained ammunition for a shotgun. After searching for and finding the rival gang members, defendant's fellow gang member fired the shotgun out the window of a car in which defendant was present. One person was killed and another injured. (*Cervantes*, *supra*, E031955.)

A jury found defendant guilty as charged of one count of first degree murder (§ 187, subd. (a), count 1), three counts of attempted murder (§§ 664, 187, subd (a), counts 2-4), one count of discharging a firearm at an occupied vehicle (§ 246, count 5), and one count of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated. Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered Penal Code section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.)

[2] The People filed a request for judicial notice of this court's record from defendant's appeal from the judgment, which this court granted. (*People v. Cervantes et al.* (Oct. 28, 2003, E031955) [nonpub. opn.].) Although we recount the facts as recited in *Cervantes*, we are cognizant that Assembly Bill No. 200 limited the use of prior appellate opinions by trial judges ruling on section 1172.6 petitions to " 'the procedural history of the case recited.' [Citation.]" (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; accord *People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

discharging a firearm from a vehicle (former § 12034, subd. (d), count 6). In addition, the jury also found true firearm discharge from a vehicle and gang-murder special circumstance allegations (§190.2, subd. (a)(21) & (22)), criminal street gang allegations (§ 186.22, subd. (b)), and firearm use allegations (§ 12022.53, subd. (d)). (*Cervantes*, *supra*, E031955.)

The trial court sentenced defendant to a term of life without the possibility of parole on count 1, plus three consecutive terms of life in prison with the possibility of parole on counts 2, 3, and 4, respectively. The trial court additionally sentenced defendant to a determinate term of 140 years in state prison based on the gang and firearms enhancements. (*Cervantes*, *supra*, E031955.)

Defendant appealed. This court modified defendant's sentence by striking the gang enhancements imposed on counts 1 through 6, and amending the 25-year section 12022.53, subdivision (d) enhancements imposed on count 3 and count 4 to 20-year enhancements under subdivision (c) of section 12022.53. This court otherwise affirmed. (*Cervantes*, *supra*, E031955.)

On May 25, 2022, defendant filed a form petition for resentencing pursuant to former section 1170.95, in which he contended he could not currently be convicted of murder or attempted murder. Defendant attached to his petition copies of the abstracts of judgment, a selection of jury instructions, and a selection of trial transcripts.

At a hearing on August 19, 2022, the People moved the court to deny the petition. The People, citing *Cervantes*, *supra*, E031955, argued that the jury had convicted defendant as a direct aider and abettor of the shooter. They contended the jury had to find that

3

defendant harbored "express malice aforethought . . . a specific intent to kill unlawfully another human being." "The transcript of the jury instructions as read to the jury and forms provided to counsel did not instruct on natural and probable consequences, and felony-murder was only given as a means [with] which to elevate the defendant's liability in the first or second degree. The jury found him to act with specific intent to kill on both specials and on verdict forms, finding the defendant, with intent to kill, aided and abetted the killing."

Defense counsel responded, "I have confirmed everything that [the People] just said. I just formally object on the record to any motion to dismiss."

The court replied, "So it does appear both the gang-murder special and a—that's fantastic. My computer just went dead. Here is my only concern with this one. There are—there's a murder charge and there are . . . attempted murder charges. I agree with your analysis completely as it relates to the murder charge. There are two specials that were found true. Both of those specials that were found true would require the jury to find one of the things that they would have to find after the law was changed. The law murder was changed in January of 2019. The attempt[ed] murders are more problematic." The court set the matter for a further hearing "because there's an objection, I think I need to give him a chance to explore the attempt[ed] murder[s]."

At a hearing on October 21, 2022, the People noted, "I gave [defense counsel] a copy of the transcript of the jury instructions as read to the jury in this case and the verdict forms as well. The court did not instruct on natural and probable consequences or felony murder

4

as was given. The only means by which felony murder was given to the jury to elevate his liability to LWOP murder because there was no other one. Also on the verdict forms, the defendant had a specific intent to kill, aiding and abetting the killing of the victim. Our position is the defendant is statutorily ineligible, and it should be denied."

Defense counsel noted, "I have read everything that's been provided to me, and I'll submit, Your Honor." The court trailed the matter again to ensure "there [were] no inappropriate instructions given on the attempt[ed] murder charges . . . ."

On November 4, 2022, the People again moved the court to deny the petition: "The previous petition was denied in 2019. That was before Senate Bill 775 was []active and allowed the petitioner to ask for relief regarding attempted murder charges. So another petition was filed, even though the previous petition was denied. However, I gave the materials to [defense counsel] earlier, even on the attempted murder charges. [Ne]ither natural and probable consequences instruction [n]or felony murder were given to the defendant's jury. He's statutorily ineligible. We'd ask that this petition be denied."

The court asked defense counsel if he concurred with the People's statement. Defense counsel responded, "I do. As to both, the murder and the attempt[ed] murders, yes." The court denied the petition.

## II.  DISCUSSION

Defendant contends the court erred in denying his petition. Specifically, defendant maintains the court erred in failing to take defendant's assertions in the petition as true, failing to require the People to file a response, failing to review the record of conviction in

rendering its decision, failing to articulate its reasons for denying the petition, and failing to base its decisions on facts that refuted defendant's allegations. We affirm.

"Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 [(Sen. Bill 1437) (2017-2018 Reg. Sess.)] 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added [former] section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)[3]

"Pursuant to [former] section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of

---

[3] The Legislature amended former section 1170.95 with Senate Bill No. 775 (2021-2022 Reg. Sess.) partially to extend relief to convictions for attempted murder and, more broadly, convictions in which malice was imputed to a person based solely on that person's participation in a crime. (Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) (*People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.' " (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

"Where the petition complies with [former section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at p. 960.) "[O]nly *after* the appointment of counsel and the opportunity for briefing may the superior court consider the record of conviction to determine whether 'the petitioner makes a prima facie showing that he or she is entitled to relief.' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 957.)

A court may rely on the record of conviction in determining whether a prima facie showing has been made. (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under [former] section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner

has made a prima facie case for relief under [former section 1170.95,] subdivision (c)." (*Ibid.*)

"[T]he prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

A denial of a section 1172.6 petition at the prima facie " ' "stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." ' [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

Where "the record of conviction does not conclusively negate the possibility that the jury found" the defendant guilty under a theory that imputed malice to him by the actions of the actual perpetrator, "an evidentiary hearing is required." (*People v. Langi* (2022) 73 Cal.App.5th 972, 984 (*Langi*).) On the other hand, where the record of conviction reflects that the defendant was not convicted under any theory of imputed malice, no evidentiary hearing is required. (*People v. Patton* (2023) 89 Cal.App.5th 649, 657, rev. granted June

8

28, 2023, S279670 ["As the sole and actual perpetrator of the attempted murder of" the victim, a defendant "is ineligible for resentencing as a matter of law."]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055, review dism. Nov. 17, 2021, S263939, ["[T]he jury instructions themselves demonstrate[d] as a matter of law that [the defendant] could not make a prima facie showing that he is entitled to relief."]; *People v. Mancilla* (2021) 67 Cal.App.5th 854, 866-867 [Petition properly denied where jury verdicts necessarily show defendant was convicted under provocative act theory.]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677, review dism. Dec. 1, 2021, S266336 [Defendant could not make prima facie showing because the jury instructions reflected the defendant was per se ineligible for relief.].)

"It is well settled that Senate Bill 1437 'does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' " (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252, fn. omitted.) "A direct aider and abettor's 'guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state.' [Citation.]" (*Ibid.*; see *People v. Medrano* (2021) 68 Cal.App.5th 177, 183 [" 'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' [Citation.]"].)

Here, as the People note, the judicially noticed records reflect that the court did not instruct on, and the jury did not find defendant guilty of, murder or attempted murder under

any theory of imputed malice.[4]  The court gave no instructions on felony murder,[5] the natural and probable consequences doctrine, or any other theory in which malice could have been imputed to defendant based on his participation in another crime.

Instead, the trial court properly instructed the jury on the principles of aiding and abetting pursuant to the People's special instruction, including the requirement that an aider and abettor share the perpetrator's intent.  That instruction closely mirrored the language of CALJIC No. 3.01, which describes *direct* liability as an aider and abettor.  (*People v. Whitson* (2022) 79 Cal.App.5th 22, 27; *People v. Amezcua and Flores* (2019) 6 Cal.5th 886, 918 [Instruction with CALCJIC 3.01 "reinforced the requirement that the jury find the intent-to-kill element proven in order to convict of murder or attempted murder on a theory of aiding and abetting."]; *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 847 [Court's instruction of jury with CALJIC 3.01 required "a conclusion that the defendant intended to further [the victim's] killing;" "the jury had to find that the defendant knew of

_____

[4]  Contrary to the People's contention, the special circumstance findings did not prohibit defendant from making a prima facie case.  (*People v. Strong* (2022) 13 Cal.5th 698, 717-718 ["A pre-*Banks* and *Clark* special circumstance finding does not negate that showing because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements."].)

[5]  The court did instruct the jury with CALJIC 8.27, on first degree felony murder, but that instruction merely permitted the elevation of the degree of murder from second to first; it did not allow defendant to be convicted of murder solely by his participation in another crime.  It specifically required that any aider and abettor "either directly and actively commit the act or [] with knowledge of the unlawful purpose of the perpetrator of the offense and with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, aid, promote, encourage, or instigate by act or advice its commission . . . ."  Thus, it required that defendant act, at minimum, as a direct aider and abettor.

the perpetrator's unlawful purpose and acted with the intent or purpose of committing, encouraging, or facilitating the crime."].)  Thus, the jury could not have convicted defendant under any theory under which malice was imputed to him.

Defendant fails to dispute that the jury did not find him guilty under a theory of imputed malice.  Rather, he contests the propriety of our taking judicial notice of the record because he maintains our review should be constrained by the record reviewed by the trial court.  He contends we should decline to apply a harmless error analysis so that future courts resolve section 1172.6 petitions properly.  We disagree.

Where the court errs in its handling of a section 1172.6 petition, we apply the *Watson* standard of harmless error analysis, i.e., whether it is " 'reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.' [Citation.]" (*People v. Oliver* (2023) 90 Cal.App.5th 466, 489, fn. 8, quoting *People v. Watson* (1956) 46 Cal.2d 818; accord *People v. Hurtado* (2023) 89 Cal.App.5th 887, 892-893.)

" ' "[W]e will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court.  [Citation.]  There can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." ' " (*Anderson v. Davidson* (2019) 32 Cal.App.5th 136, 144.)  Where "there is simply no evidence that could support a favorable finding for [defendant], then any legal error in the court's reasoning or basis for its decision quite obviously is harmless." (*In re J.R.* (2022) 82 Cal.App.5th 526, 533-534, fn. omitted [affirming where remand due to legal error would be pointless because there were no factual

11

issues to resolve that would result in a decision favorable to the defendant].) Courts refuse requests for remand where the remedy would be "worse than pointless: remands would force people to expend resources but sentences would not change. There would be cost but no benefit." (*People v. Venegas* (2020) 44 Cal.App.5th 32, 42; see *People v. Schaffer* (2020) 53 Cal.App.5th 500, 506 [pointless to remand where defendant would be unable to gain any effective relief].)

We agree the court should have made clear its reasons for denying the petition and upon what records it was basing its ruling. To be certain, the better manner of proceeding below on such matters would be for the People to move into evidence, or request that the court take judicial notice of, the records that establish a defendant's legal ineligibility.

Here, however, defendant fails to identify any prejudice he suffered due to the procedural errors he identifies.[6] Reversal and remand would be an idle act because, as noted *ante*, defendant is per se ineligible for relief. We will not engage in the futile act of remanding the matter. (*People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 ["[R]emand is not appropriate when it would be an idle act."]; *People v. Tuggles* (2009) 179 Cal.App.4th

---

[6] We disagree with defendant's contention that the court failed to review the record of conviction in rendering its decision or failed to base its decision on "facts" that refuted defendant's allegations. The People expressly referenced the reporter's transcripts of the jury instructions, the jury instruction forms, and the verdict forms. "[W]e presume the trial court followed the law in exercising its duties and duly considered the evidence presented to it," and the failure to "mention certain evidence does not mean that the court 'ignored' that evidence." (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092.) Moreover, at the hearing on August 19, 2022, the court expressly referenced that it was looking at its records of defendant's conviction.

339, 388 ["Here, remand 'would be a useless and futile act and would be of no benefit to appellant[s].'  [Citation.]"].)

## III.  DISPOSITION

The court's order denying the petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                              J.

We concur:

RAMIREZ
              P. J.

CODRINGTON
                    J.